UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
YANNA LAURA WENG


                          Plaintiff,                    **COMPLAINT AND**
           -against-                                    **JURY DEMAND**

MICROSOFT CORPORATION and
MICHAEL LIPNICKY          ,


                          Defendants.
----------------------------------------------------------------------x

     Plaintiff YANNA LAURA WENG (hereinafter "Plaintiff") by her attorneys, The Kurland Group, with offices at 85 Broad St., 28th Floor New York, NY 10004, complaining of Defendants' discriminatory treatment, including but not limited to retaliation and wrongful termination of Plaintiff. Plaintiff alleges upon knowledge as to herself and her own acts, and otherwise upon information and belief:

## **NATURE OF THE ACTION**

    1.     This action is brought to remedy the discrimination Plaintiff suffered based on her race and sex by MICROSOFT CORPORATION (hereinafter "Microsoft") and MICHAEL LIPNICKY (hereinafter "Mr. Lipnicky") (hereinafter collectively "Defendants").

    2.     Plaintiff alleges herein that Defendants' acts and omissions violate Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq.*, the New York State Human Rights Law (hereinafter "NYS HRL"), New York Executive Law §§290, *et seq.*, and the New York City Human Rights Law, Administrative Code and Charter, § 8-101, *et seq* (hereinafter "NYC HRL").

1

3.    Plaintiff brings this action against Defendants to secure monetary relief, including backpay, front pay, compensatory damages, and attorneys' fees, as well as declaratory relief, to remedy the harm caused by Defendants' discriminatory conduct, including but not limited to the termination of Plaintiff's employment by Defendants despite Plaintiff performing her job diligently.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 42 U.S.C. §2000., 28 U.S.C. §1331.

5.    This Court may exercise supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367.

6.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1)(2), as Defendant MICHAEL LIPNICKY resides in this district and the events giving rise to Plaintiff's claims occurred in this district.

7.    Plaintiff has exhausted her administrative remedies by timely filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 9, 2021 (**Exhibit A**).

8.    On January 20, 2023, the EEOC issued a Notice of Right to Sue (**Exhibit B**).

9.    This lawsuit was commenced within ninety (90) days of Plaintiff's receipt of this Notice of Right to Sue from the EEOC (**Exhibit B**).

## JURY DEMAND

10.    Plaintiff demands a trial by jury in this action on each and every one of her claims.

2

## PARTIES

11.      PLAINTIFF YANNA LAURA WENG is an Asian-American female who worked for Microsoft as an Account Executive from August 22, 2016 until September 16, 2020, and lives in Brooklyn, New York.

12.      DEFENDANT MICROSOFT CORPORATION is a corporation that maintains its principal place of business in the State of New York at 11 Times Square, New York, New York 10036.

13.      DEFENDANT MICHAEL LIPNICKY is an agent of Defendant MICROSOFT CORPORATION and currently maintains the title of Director of Azure Sales at Defendant MICROSOFT CORPORATION. MICHAEL LIPNICKY lives and works in New York City and he was Plaintiff's supervisor immediately prior to Plaintiff's termination.

## STATEMENT OF FACTS

14.      Plaintiff is an Asian-American female who worked for Microsoft from August 22, 2016 until September 16, 2020 when her employment with Microsoft was abruptly terminated by Mr. Lipnicky.

15.      In August 2016, Plaintiff was hired by Microsoft as a Senior Specialist on Microsoft's sales team. In this role, Plaintiff was required to develop relationships with customers, generate new business, and lead her sales team to reach their target sales goals.

16.      Microsoft regularly evaluated Plaintiff's performance through a system of review and development procedures known as "Connects."

17.      Importantly, Connects are not only intended to provide feedback for

3

Microsoft employees, but also identify growth opportunities, and especially for a salesperson such as Ms. Weng, supervisors use Connects to encourage employees to improve and to highlight areas in which employees can implement suggested improvement.

18.     Each Connect report promotes a "spirit of growth mindset" whereby even employees who perform satisfactorily are encouraged to learn, find lessons, self-reflect, and continually improve. (**Exhibit C**, p. 3). Microsoft Connect reports acknowledge that "while we perform and deliver impact we also want to transform – by learning, finding lessons and inspiration in the success of others, self-reflecting and really hearing perspectives from others, embracing challenges and risks – this is how we continually improve." (**Exhibit C**, 13, p. 3)

19.     According to Defendants, a "growth mindset leads to a desire to learn and therefore a tendency to embrace challenges, persist in the face of setback, see failures as essential to mastery, learn from criticism and find lessons and inspiration in the success of others." (**Exhibit C**, p. 3).

20.     As such, the Microsoft Connect culture is used to identify areas of growth even when employees meet or exceed their targets. The reality is that these performance evaluations are designed to foster development in Microsoft's employees, not punish employees who otherwise perform well for areas of improvement that the Connects were designed to identify for the purpose of strategizing continued growth.

21.     In other words, the purpose of Connects is to provide feedback and encourage employees to reach for new goals even when employees successfully execute their job responsibilities, which Plaintiff did.

22.     During her time with Microsoft, Plaintiff performed her job diligently

and had consistently met her sales targets ten (10) quarters in a row, both before and during the COVID-19 pandemic. Meeting these sales goals was particularly significant given the upheaval and uncertainty caused by the pandemic, which was extremely difficult.

23.     By way of example, Plaintiff's Connects demonstrate her ongoing commitment to the "growth mindset," and she was consistently praised for demonstrating her ability to improve her performance based on the feedback provided to her in her Connects. (**Exhibit D**, p. 6).

24.     Additionally, Plaintiff's Connects have expressly acknowledged her commitment to high standards in her work and the work of the team she managed. (**Exhibit E**, p. 6).

25.     In fact, Plaintiff regularly sought feedback in one-on-one meetings with Microsoft mentors, with whom Plaintiff worked to meet the goals set in each of her Connects.

26.     Plaintiff, along with every other employee of Microsoft, was subject to the Connect performance review process, a part of which necessarily included strategies for improvement moving forward. Despite Microsoft's commitment to a "growth mindset", four (4) of Plaintiff's most recent ten (10) Connects were marked with "insufficient results," even though each of them acknowledged the many ways in which Plaintiff successfully executed her job. (**Exhibit C; Exhibit F; Exhibit G; Exhibit H**).

27.     Despite being marked with insufficient results, none of Plaintiff's Connects prior to 2020 intimated that her employment with Microsoft was in jeopardy.

28.     Moreover, Plaintiff's Connects demonstrated Plaintiff's diligence with regard to her work performance, and her commitment to success at Microsoft.

29.     In fact, Plaintiff's FY20 Development Plan, which covered the period of June 2019 through July 2019, acknowledged that Plaintiff was "showing fantastic growth mindset," and that Plaintiff responded "very positively to the feedback" provided to her in previous Connects. (**Exhibit G**, pp. 4, 5-6). Additionally, Microsoft acknowledged that "we have also better aligned [Plaintiff's] accounts in FY20 to remove some of the issues outside of [Plaintiff's] control." (**Exhibit G**, p. 4).

30.     However, when Mr. Lipnicky became Plaintiff's manager in April 2020, Plaintiff's Connects shifted in tone and focus. While Mr. Lipnicky acknowledged that he was "writing [Plaintiff's] May 2020 Connect as a new Microsoft Manager," and despite having reviewed all prior Connect feedback, including Plaintiff's progress in several areas, Mr. Lipnicky still focused more heavily on Plaintiff's areas of improvement. (**Exhibit C**, p. 5-6).

31.     Mr. Lipnicky acknowledged that from January 23, 2020 to May 12, 2020, Plaintiff "has made progress on impact in several areas." (**Exhibit C**, p. 5). Moreover, Plaintiff's May 2020 Connect states that her manager was confident Plaintiff "[would] hit her full year target with only a ($38k) gap to plan and 1.5 months of consumption remaining." (**Exhibit C**, p. 8).

32.     Despite Mr. Lipnicky acknowledging Plaintiff's positive contributions and progress toward her full year target, he still marked her Connect with "insufficient results." (**Exhibit C**).

33.     It was not until Plaintiff's Q1 FY21 Connect, reviewing the period from May 13, 2020 to August 20, 2020, and provided by Mr. Lipnicky, that Plaintiff was made aware that her employment with Microsoft might be in jeopardy. (**Exhibit H**, p. 6). This

was stated after Mr. Lipnicky again acknowledged that "Laura finished FY20 strong, over attain[ed] her quota…contributed to the growth on her accounts… and received positive feedback from her [team] for her work to help grow the account." (**Exhibit H**).

34.     Despite this, Plaintiff's employment with Microsoft was terminated on September 16, 2020, just months after her Q1 FY21 Connect which acknowledged Plaintiff's many positive contributions to her work. (**Exhibit I**).

35.     At or around the time of her termination just six (6) months later, Plaintiff was told by Mr. Lipnicky and other Microsoft representatives that the decision to terminate her employment was not based on whether or not she met her sales targets, which she did, but it was instead based on a subjective assessment of *how* she performed her job.

36.     Not only did Plaintiff consistently meet her sales targets, but upon information and belief, many similarly situated white male salespeople at Microsoft did not, in fact, meet their sales targets during the COVID-19 pandemic and yet their employment was not terminated.

37.     Moreover, prior to Mr. Lipnicky becoming her supervisor, Plaintiff had continued to receive the types of financial compensation that are awarded for high performance, including raises and bonuses, even after she received constructive criticism in her Connects. In fact, Plaintiff was awarded pay increases and bonuses pursuant to Microsoft's compensation system even after her Connects in 2018 and 2019 were marked with "insufficient results." This included receiving a bonus and percentage increase in her salary after her July/August 2019 Connect, which demonstrated that Plaintiff was indeed performing her job satisfactorily in the years preceding her termination.

38.     Plaintiff's prior manager, Paul Cousins, while reviewing Plaintiff's

work from November 27, 2018 through February 6, 2019, stated that Plaintiff "needs to continue focusing on finding new opportunities and building relationships in her accounts," (**Exhibit J**, p. 6), indicating Plaintiff was already performing her job satisfactorily even though areas for growth were always available.

39.     Additionally, Plaintiff's H2 FY20 Connect for the period of December 7, 2019 through January 22, 2020, acknowledged that "since feedback was provided to [Plaintiff] in Q4 of FY 19, [Plaintiff] notably improved her performance. [Plaintiff] has been extremely open to coaching and has been actively seeking it which is a great demonstration of a growth mindset." (**Exhibit D**, p. 6)

40.     Additionally, during Plaintiff's employment, she was recognized for her significant contributions to Microsoft's success, including but not limited to receiving the Microsoft Hero Award in 2017.

41.     Plaintiff also went above and beyond her responsibilities by helping to start the Microsoft Toastmasters club and serving as co-chair of the New York Region's GIVE Campaign from 2017-2019.

42.     Additionally, Plaintiff also received recognition in 2017 as the recipient of the "Deal of the Region" award for a multi-year deal enhancing Microsoft's success.

43.     Plaintiff performed her job diligently throughout her employment with Microsoft, including during the COVID-19 pandemic. Despite this, Plaintiff was forced to endure employment practices and behavior, which constituted unlawful discrimination, harassment, and retaliation on the basis of her sex and race.

44.     Aside from the above-mentioned actions by Defendants, Plaintiff also endured harassment by a white male co-worker, which Plaintiff reported to her supervisors

in March 2020.

45.     In and around March 2018, this co-worker, an employee on a parallel team, began directing anger and hostility toward Plaintiff in many e-mail and instant messaging communications.

46.     This harassment grew worse over time and reached the point that Plaintiff's direct manager at the time, Paul Cousins, who also managed the individual in question, advised Plaintiff not to engage with this individual.

47.     Mr. Cousins also advised Plaintiff that he would hold a meeting with this individual and Mr. Cousin's supervisor in order to address his hostile communications with Plaintiff.

48.     Upon information and belief, this meeting did occur, however the harassment and hostility did not stop, and continued for the remainder of Plaintiff's tenure at Microsoft.

49.     In March 2020, Plaintiff reported this issue to her temporary manager, Chris Taddeo, and advised him of the harassment she was subjected to by her co-worker.

50.     After reporting the issue to her temporary manager, Plaintiff was referred to Human Resources to report her complaints and Plaintiff's skip-level manager, Tracie Larson, was also notified.

51.     Upon information and belief, rather than properly investigate Plaintiff's complaint to ensure such mistreatment would not recur, Plaintiff's complaint instead led Defendants to target her and ultimately terminate her employment.

52.     Moreover, Plaintiff underwent her FY20 Q3 Connect in May 2020 for the period of January 23, 2020 to May 12, 2020, after reporting the harassment she endured

to her managers and Human Resources, and she received an "insufficient results" assessment.

53.     Only months later, in September 2020, Plaintiff's employment with Defendants was terminated because of alleged underperformance.

54.     Instead of rewarding Plaintiff for her dedication, reliability and commitment to growth, cited throughout her Connects, Mr. Lipnicky terminated her employment on September 16, 2020 despite the fact that Mr. Lipnicky had only been her supervisor for five (5) months. (**Exhibit I**).

55.     Upon information and belief, Plaintiff was the second person of color Mr. Lipnicky terminated from Plaintiff's team during this short time frame and Mr. Lipnicky reassigned one of Plaintiff's most lucrative accounts to a white male after he terminated Plaintiff's employment.

56.     Further, upon information and belief, despite the fact that it was extremely difficult to secure re-employment during the COVID-19 pandemic, Defendants still targeted Plaintiff for termination because of her sex and race and because she reported the harassment she endured by a white male co-worker.

57.     As a result of the foregoing, Plaintiff has suffered from the discriminatory effects of Defendants' employment practices, the full extent of which are not yet known, and Plaintiff has suffered injuries and damages, and continues to suffer such injuries and damages, including but not limited to loss of wages, salaries, benefits, and employment opportunities as well as emotional distress and mental anguish.

## AND AS FOR THE FIRST CAUSE OF ACTION
## FOR DISCRIMINATION AND WRONGFUL TERMINATION
## UNDER TITLE VII
## AS TO ALL DEFENDANTS

58.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

59.     The actions, and inactions of Defendants, as set forth above, constitute discrimination against Plaintiff on the basis of her sex and race, in violation of Title VII.

60.     Plaintiff is a member of two protected classes who satisfactorily performed her job while working for Defendants, and yet she suffered the adverse employment action of wrongful termination by Defendants, which was impermissibly motivated by Plaintiff's sex and race, contrary to Title VII, and occurred under circumstances giving rise to an inference of discriminatory intent.

61.     As a direct result of Defendants' conduct complained of herein, Plaintiff has suffered damages, including but not limited to loss of income, loss of employment opportunity, and loss of other employment benefits including but not limited to retirement benefits and bonuses and has suffered and continues to suffer emotional distress and mental anguish as a result of such deprivation. The full extent of these damages is not yet known.

62.     Defendants knew or should have known that their actions constituted unlawful discrimination and/or showed reckless disregard for Plaintiff's statutorily protected rights. As a result of Defendants' acts, Plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

**AND AS FOR THE SECOND CAUSE OF ACTION**
**FOR DISCRIMINATION AND WRONGFUL TERMINATION**
**UNDER THE NEW YORK STATE HUMAN RIGHTS LAW**
**AS TO ALL DEFENDANTS**

63.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

64.     The actions, and inactions of Defendants, as set forth above, constitute discrimination against Plaintiff on the basis of her sex and race, in violation of NYS HRL.

65.     Plaintiff is a member of two protected classes who satisfactorily performed her job while working for Defendants, and yet she suffered the adverse employment action of wrongful termination by Defendants, which was impermissibly motivated by Plaintiff's sex and race, contrary to NYS HRL, and occurred under circumstances giving rise to an inference of discriminatory intent.

66.     As a direct result of Defendants' conduct complained of herein, Plaintiff has suffered damages, including but not limited to loss of income, loss of employment opportunity, and loss of other employment benefits including but not limited to retirement benefits and bonuses and has suffered and continues to suffer emotional distress and mental anguish as a result of such deprivation. The full extent of these damages is not yet known.

67.     Defendants knew or should have known that their actions constituted unlawful discrimination and/or showed reckless disregard for Plaintiff's statutorily protected rights. As a result of Defendants' acts, Plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## AND AS FOR THE THIRD CAUSE OF ACTION
## FOR DISCRIMINATION AND WRONGFUL TERMINATION
## UNDER THE NEW YORK CITY HUMAN RIGHTS LAW
## AS TO ALL DEFENDANTS

68.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

69.     The actions, and inactions of Defendants, as set forth above, constitute discrimination against Plaintiff on the basis of her sex and race, in violation of NYC HRL.

70.     Plaintiff is a member of two protected classes who satisfactorily performed her job while working for Defendants, and yet she suffered the adverse employment action of wrongful termination by Defendants, which was impermissibly motivated by Plaintiff's sex and race, contrary to NYC HRL, and occurred under circumstances giving rise to an inference of discriminatory intent.

71.     As a direct result of Defendants' conduct complained of herein, Plaintiff has suffered damages, including but not limited to loss of income, loss of employment opportunity, and loss of other employment benefits including but not limited to retirement benefits and bonuses and has suffered and continues to suffer emotional distress and mental anguish as a result of such deprivation. The full extent of these damages is not yet known.

72.     Defendants knew or should have known that their actions constituted unlawful discrimination and/or showed reckless disregard for Plaintiff's statutorily protected rights. As a result of Defendants' acts, Plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

**AND AS FOR THE FOURTH CAUSE OF ACTION**
**BASED UPON UNLAWFUL RETALIATION UNDER TITLE VII**
**AS TO ALL DEFENDANTS**

73.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

74.     Defendants, individually and collectively, have engaged in unlawful retaliation prohibited by Title VII.

75.     Plaintiff reported harassment by a white male co-worker to her supervisors and to human resources, thereby engaging in a protected activity of which Defendants were made aware.

76.     As a direct result of Plaintiff's complaint, Defendants targeted Plaintiff's employment, issued a negative performance review, and ultimately terminated her employment months after Plaintiff complained of the harassment.

77.     As a direct result of Defendants' conduct complained of herein, Plaintiff has suffered damages, including but not limited to loss of income, loss of employment opportunity, and loss of other employment benefits including but not limited to retirement benefits and bonuses, and has suffered and continues to suffer emotional distress and mental anguish as a result of such deprivation. The full extent of these damages is not yet known.

**AND AS FOR THE FIFTH CAUSE OF ACTION**
**BASED UPON UNLAWFUL RETALIATION**
**UNDER BOTH THE NEW YORK STATE HUMAN RIGHTS LAWS**
**AS TO ALL DEFENDANTS**

78.     Plaintiff repeats and reiterates each and every allegation contained in

the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

79.     Defendants, individually and collectively, have engaged in unlawful retaliation prohibited by NYS HRL.

80.     Plaintiff reported harassment by a white male co-worker to her supervisors and to human resources, thereby engaging in a protected activity of which Defendants were made aware.

81.     As a direct result of Plaintiff's complaint, Defendants targeted Plaintiff's employment, issued a negative performance review, and ultimately terminated her employment months after Plaintiff complained of the harassment.

82.     As a direct result of Defendants' conduct complained of herein, Plaintiff has suffered damages, including but not limited to loss of income, loss of employment opportunity, and loss of other employment benefits including but not limited to retirement benefits and bonuses, and has suffered and continues to suffer emotional distress and mental anguish as a result of such deprivation. The full extent of these damages is not yet known.

**AND AS FOR THE SIXTH CAUSE OF ACTION**
**BASED UPON UNLAWFUL RETALIATION**
**UNDER BOTH THE NEW YORK CITY HUMAN RIGHTS LAWS**
**AS TO ALL DEFENDANTS**

83.     Plaintiff repeats and reiterates each and every allegation contained in the foregoing paragraphs with the same full force and effect as if hereinafter set forth at length.

84.     Defendants, individually and collectively, have engaged in unlawful

retaliation prohibited by NYC HRL.

85.      Plaintiff reported harassment by a white male co-worker to her supervisors and to human resources, thereby engaging in a protected activity of which Defendants were made aware.

86.      As a direct result of Plaintiff's complaint, Defendants targeted Plaintiff's employment, issued a negative performance review, and ultimately terminated her employment months after Plaintiff complained of the harassment.

87.      As a direct result of Defendants' conduct complained of herein, Plaintiff has suffered damages, including but not limited to loss of income, loss of employment opportunity, and loss of other employment benefits including but not limited to retirement benefits and bonuses, and has suffered and continues to suffer emotional distress and mental anguish as a result of such deprivation. The full extent of these damages is not yet known.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

A. Declare the acts and practices of Defendants are in violation of the laws of the United States and the State of New York;

B. Award Plaintiff all lost wages and benefits, including back pay and appropriate front pay together with all other benefits to which Plaintiff is entitled;

C. Award Plaintiff compensatory and punitive damages;

D. Award interest as allowed by law;

E. Award Plaintiff reasonable attorneys' fees, expenses and costs of this proceeding; and

    F.  Such other and further relief as this Court deems just and proper.

Date:  April 20, 2023
        New York, NY

                                     _____
                                     Erica T. Healey-Kagan (EK-0425)
                                     THE KURLAND GROUP
                                     *Attorneys for Plaintiff*
                                     85 Broad Street, 28th Floor
                                     New York, New York 10004
                                     (212) 253-6911 (t)
                                     (212) 614-2532 (f)
                                     kagan@kurlandgroup.com